FILED
SUPERIOR COURT
OF GUAM

2021 DEC -3 PH 2: 25

CLERK OF COURT.

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, <br><br> Plaintiff, <br><br> vs. <br><br> EFOTOMWAR EZRA <br><br> Defendant. | Case No. CF0385-16 <br><br> **DECISION & ORDER ON DEFENDANT'S SECOND MOTION TO VACATE PLEA AGREEMENT BASED ON IMPROPER LEGAL ADVICE** |

## INTRODUCTION

This matter came before the Honorable Alberto E. Tolentino on September 20, 2021 on a submission by Defendant Efotomwar Ezra ("Defendant") of a Second Motion to Vacate Plea Agreement Based on Improper Legal Advice, which was initially filed on April 30, 2021. The People of Guam ("People") are represented by Assistant Attorney General Jeremiah Luther. The Defendant is represented by Attorney William Pole. Having considered the parties' arguments and the applicable law, the Court hereby **DENIES** the Defendant's motion.

## BACKGROUND

On June 27, 2016 a grand jury indicted the Defendant in CF085-16 on Attempted Murder (as a First Degree Felony), special allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony; Aggravated Assault (as a Second Degree Felony), special

allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony; Aggravated Assault (as a Third Degree Felony); and Reckless Conduct (as a Misdemeanor). Indictment, Jun. 27, 2016. The Defendant initially demanded a jury trial. *See* Jury Demand, Aug. 17, 2016. On November 21, 2017, the Defendant informed the Court he had entered into a plea agreement with the People. *See* Notice of Change of Plea, Nov. 21, 2017.

Defendant entered a guilty plea to the offense of Aggravated Assault (as a Third Degree Felony) on January 3, 2018. Rep.'s Tr. of Proceeding, Change of Plea Hr'g, Jan. 3, 2018 at 33, 5–11 (hereinafter "Change of Plea Hr'g"). At the Change of Plea Hearing, the Court set a sentencing hearing for March 21, 2018. *Id.* On March 28, 2018, the Court vacated and set aside Defendant's sentencing. Minute Entry, March 28, 2018. To date, the Court has not sentenced the Defendant. Reply to People's Resp. to Second Mot. to Vacate Plea Agreement at 3.

The Defendant subsequently filed a Motion to Withdraw Plea of Guilty. Notice of Mot., April 13, 2018. The People filed an opposition. *See* People's Opp'n to Def.'s Mot. to Withdraw Plea of Guilty, May 14, 2021. Defendant filed a reply to the People's Opposition. *See* Reply to Opp'n to Mot. to Withdraw Plea of Guilty, May 24, 2020. The People filed a response to the Defendant's Reply to the People's Opposition. *See* People's Resp. to Def.'s Reply Re: Withdrawal of Def.'s Guilty Plea, May 30, 2018. The Defendant filed a Second Motion to Vacate Plea Agreement Based Upon Improper Legal Advice; and Memorandum of Points and Authorities. *See* Second Mot. to Vacate Plea Agreement Based Upon Improper Legal Advice; and Mem. of P. & A., Apr. 30, 2021. The People filed a response to the second motion. *See* People's Resp. to Def.'s Second Mot. to Vacate Plea Agreement, Jun. 2, 2021. The Defendant filed a reply to the People's Response. *See* Reply to People's Resp. to Second Mot. to Vacate Plea, Jun. 7, 2021. On September 20, 2021, the Court held an evidentiary

hearing on the Second Motion to Vacate Plea Agreement Based on Improper Legal Advice, and took the motion under advisement.[1] Minute Entry, Sept. 20, 2021.

## DISCUSSION

Under Guam Law, a defendant may request by motion that the Court permit him to withdraw his plea of guilty. 8 GCA § 120.42. The timing of defendant's motion affects the standard under which the Court reviews that request to withdraw a guilty plea. If the motion is made prior to sentencing then the Court may permit a defendant to withdraw his plea for any reason that it finds "fair and just." *People v. Castro*, 2016 Guam 16 ¶ 21 (citing *United States v. Erlenborn*, 483 F.2d 165, 168 (9th Cir. 1972)). However, after the Court has sentenced a defendant, the Court considers the request under the "manifest injustice" standard. 8 GCA § 120.42; *see also Erlenborn*, 483 F.2d at 168 (stating the "fair and just" standard applies only to motions made prior to sentencing). The Court has not sentenced the Defendant. Therefore, the "fair and just" standard applies.

Under the "fair and just" standard, a defendant bears the burden of demonstrating "a fair and just reason for requesting the withdrawal." *People v. Castro*, 2016 Guam 16 ¶ 23 (citing Fed. R. Crim. P. 11(d)(2)(B)). Here, the Defendant provides two primary arguments for vacating his plea agreement. Reply to People's Resp. to Second Mot. to Vacate Plea Agreement at 24–25. First, the Defendant argues that he did not enter the plea agreement intelligently, knowingly, and voluntarily because he did not understand the possibility of deportation at the plea hearing. *Id.* at 2–3. Second, the Defendant claims that his previous attorney, Attorney Joaquin C. Arriola ("Mr. Arriola"), failed to inform him that accepting the

---

[1] The Court issues a decision on the Defendant's Second Motion to Vacate Plea Agreement Based on Improper Legal Advice. It is unclear if a decision was issued on the Defendant's Motion to Withdraw Plea of Guilty. Regardless, Defendant's Motion to Withdraw Plea of Guilty motion is now moot.

plea agreement led to mandatory deportation, which he argues constitutes ineffective assistance of counsel. *Id.* at 4–5.

### a. The Defendant entered into the plea agreement intelligently, knowingly, and voluntarily.

A defendant must make a guilty plea intelligently, knowingly, and voluntarily. *People v. Van Bui*, 2008 Guam ¶ 11. In determining whether a defendant made a plea intelligently, knowingly, and voluntarily, the Court considers the totality of the circumstances. *Id.* ¶ 15. A proper colloquy of the Court explaining the facts and law of a plea agreement to a defendant, combined with defendant's assertions that he understands the terms he is pleading guilty to, is strong evidence that a defendant has made his plea knowingly and intelligently. *See Castro*, 2016 Guam ¶¶ 45–49.

### 1. The plea colloquy demonstrates that the Defendant entered the plea agreement intelligently, knowingly, and voluntarily.

The Defendant contends that he did not understand the concept of mandatory deportation and, therefore, he did not make his guilty plea intelligently, knowingly, and voluntarily. Reply to People's Opp'n to Second Mot. to Vacate Plea Agreement at 2. At the plea colloquy, the Defendant stood before the Court and affirmed that he was voluntarily entering a guilty plea. Change of Plea Hr'g at 15–16. The Court gave the plea colloquy in English and an interpreter gave the colloquy in Chuukese, the Defendant's native language. *Id.* The Court informed the Defendant to stop the Court if the Defendant did not understand anything that the Court said. *Id.* at 8. The Defendant stated that he signed the plea agreement, and Mr. Arriola informed the Court that he went through the plea agreement twice with the Defendant and an interpreter. *Id.* at 7–9. The Defendant affirmed that he had enough time to talk with Mr. Arriola about the charges against him. *Id.* at 5.

The Court asked the Defendant if he understood that by taking the plea agreement, he was giving up a number of rights, including all potential defenses and reasons for committing the offense, the right for motions of dismissal or suppression, the right to confront witnesses, the right to make the People prove their case "beyond a reasonable doubt," and the right to a jury trial. *Id.* at 10–11. The Defendant responded that he understood he was giving up all of these rights by taking the plea agreement. *Id.* Furthermore, the Court asked if anyone forced the Defendant or made him sign the plea agreement. *Id.* at 13. The Defendant answered these questions in the negative. *Id.* The Defendant answered affirmatively when the Court asked if he wanted to sign the plea agreement, if he understood the nature of the charges, and the mandatory and maximum penalties. *Id.* Lastly, the Defendant indicated that he was satisfied with Mr. Arriola's representation. *Id.* at 13–14.

The Court informed the Defendant that "if he was an alien, his guilty plea may have immigration consequences, like deportation." *Id.* at 14. The Defendant argues that it was not clear that he understood this statement, and that he did not understand at that time that deportation was mandatory for this offense. Reply to People's Mot. to Vacate Plea at 2. However, the Court asked the Defendant twice if Mr. Arriola counseled the Defendant on his immigration status, and the Defendant answered affirmatively. Change of Plea Hr'g at 14–15. The Defendant's affirmative response shows that he understood the immigration consequences—including mandatory deportation—based on his conversations with Mr. Arriola. *Id.*

Consequently, based on the Defendant's answers to the Court's inquiries, the Court finds that the plea colloquy was proper. Nothing in the record demonstrates that the Defendant did not understand the rights he gave up; and, at no time did he indicate any confusion or ask for clarification during the plea colloquy. The Court is satisfied that there were no additional

questions the Court could have asked to ensure that the Defendant understood the plea agreement. Accordingly, the proper plea colloquy supports the People's assertion that the plea was made intelligently, knowingly, and voluntarily.

**2. Mr. Arriola's discussions with the Defendant establish that the Defendant entered into the plea intelligently, knowingly, and voluntarily.**

The Defendant declares that the plea agreement does not say anything about mandatory deportation, and that the Court did not tell him about the risk of mandatory deportation. Decl. of Ezra Efodomwar In Supp. of Mot. to Withdraw Plea of Guilty, Apr. 13, 2018, 2–3 (hereinafter "Def.'s Decl."). The Defendant also declares that his lawyer "may have told him that he may be deported, but no one ever told him that he will be deported." *Id.* at 3. The Defendant is correct that the Court did not inform the Defendant that Aggravated Assault is a mandatory deportable offense during the Change of Plea Hearing. Change of Plea Hr'g at 14–15. The Defendant is also correct that the plea agreement does not state that Aggravated Assault is a mandatory deportable offense. Plea Agreement, Jan. 9, 2018 at 2. Even so, both the Court and plea agreement informed the Defendant that a guilty plea could lead to possible immigration consequences, and affirmed the Defendant had discussed these possible consequences with counsel. *Id*; Change of Plea Hr'g at 14–15. Furthermore, Mr. Arriola testified under oath that he informed the Defendant about mandatory deportation. Digital Recording at 2:36:34–3:13:40, Sept. 20, 2021. Mr. Arriola stated that he explained to the Defendant the difference between deportable offenses and mandatory deportable offenses. *Id.* After obtaining a waiver of attorney-client privilege from the Defendant, Mr. Arriola further testified that he explained to the Defendant that Aggravated Assault is a mandatory deportable offense. *Id.* Mr. Arriola explained that a mandatory deportable felony offense means that the federal government will deport the Defendant. *Id.*

Additionally, Mr. Arriola testified that he discussed the opportunity to go to trial with the Defendant, and he believes that the interpreter translated the discussion correctly. *Id.* Mr. Arriola explained the Guam jury trial process to the Defendant. *Id.* Likewise, the Defendant and Mr. Arriola discussed the other aspects of the plea colloquy. *Id.* Mr. Arriola informed the Defendant of the rights the Defendant would give up if he pled guilty to Aggravated Assault, and that the Defendant appeared to understand the rights he was giving up during that conservation. *Id.*

At no time prior to the pre-sentencing report did the Defendant tell Mr. Arriola that he did not understand the plea agreement, and he never expressed that he did not want to go forward with the plea agreement. *Id.* On the day of the Change of Plea Hearing, Mr. Arriola believed that the Defendant understood the meaning of mandatory deportation. *Id.*

The Court finds that Mr. Arriola's discussions with the Defendant ensure that the Defendant entered into the plea agreement intelligently, knowingly, and voluntarily. Mr. Arriola explained the meaning of "mandatory deportation" to the Defendant and informed the Defendant of the rights he would give up if he pled guilty to Aggravated Assault.

Lastly, the Defendant emphasizes that he has consistently stated between the Change of Plea Hearing and two motions filed on his behalf that he did not understand the possibility of deportation. Reply to People's Resp. to Second Mot. to Vacate Plea Agreement at 3, 18–20. The Defendant also emphasizes that he followed the correct procedure by informing the Court he did not understand the issue of deportation and wished to go to trial before sentencing. *Id.* at 3, 21–22. While the Defendant's consistency and timing influence the standard—the timing requires the "just and fair standard"—they do not illustrate why the Defendant's guilty plea was not made intelligently, knowingly, and voluntary. *See Erlenborn*, 483 F.2d at 168

(omitting any discussion about the influence of the defendant's timing of a motion to withdraw a plea on whether the plea was made intelligently, knowingly, and voluntarily).

Considering the totality of the circumstances, the Court finds that the Defendant entered his guilty plea intelligently, knowingly, and voluntarily. When taken together, the plea colloquy and Mr. Arriola's testimony regarding his conversations with the Defendant make clear that both Mr. Arriola and the Court informed the Defendant of the rights—including immigration rights—he forfeited by entering the plea.

Accordingly, the Court finds that the Defendant did not make his plea involuntarily, unknowingly or unintelligently such that withdraw of his plea is "just and fair."

### b. Ineffective assistance of counsel

The Defendant contends that his failure to understand the possibility of mandatory deportation was ineffective assistance of counsel. Reply to People's Resp. to Second Mot. to Vacate Plea Agreement at 3, 18–21. Failure of an attorney to inform a criminal defendant that his guilty plea carries the risk of deportation may be a basis for ineffective assistance of counsel. *Padilla v. Kentucky*, 559 U.S. 365, 364 (2010). Mr. Arriola testified under oath that he correctly advised the Defendant that entering into a guilty plea meant mandatory deportation. Digital Recording at 2:36:34–3:13:40, Sept. 20, 2021. Mr. Arriola also testified that he informed the Defendant that mandatory deportation meant that the Defendant would not have a chance to make his case for staying because the federal government does not have any discretion. *Id.*

Unlike the defendant in *Castro*, the Defendant does not allege that Mr. Arriola made any statements coercing the Defendant to take the plea agreement. *Castro*, 2016 Guam 16 ¶ 50. In that case, Castro's attorney told Castro that his attorney was not ready for trial, Castro's wife would be arrested and charged if Castro did not enter the plea agreement, Castro would

receive a better deal than offered if he signed the plea agreement, and if Castro did not waive his speedy trial rights the judge would be mad. *Id.* The Defendant alleges that Mr. Arriola did not inform the Defendant regarding the meaning of mandatory deportation. Def.'s Decl. at 3. Yet—as discussed in greater detail above—Mr. Arriola took the time to explain to the Defendant that the federal government has the authority to deport him if he pleads guilty to Aggravated Assault. Digital Recording at 2:36:34–3:13:40, Sept. 20, 2021. Mr. Arriola testified that he discussed the facts and offenses—as well as the strengths and weaknesses—of the case with the Defendant. *Id.* Thus, the Court finds that Mr. Arriola gave the Defendant effective assistance of counsel because at the time the Defendant entered into the guilty plea, Mr. Arriola had explained the meaning and consequence of mandatory deportation, the other rights that the Defendant was giving up, and the facts and offenses of the case. Furthermore, Mr. Arriola believed that the Defendant understood these explanations.

As Mr. Arriola gave effective assistance of counsel, the Court finds no "fair and just" reason that it should vacate the plea agreement.

## CONCLUSION

For the above reasons, the Court **DENIES** the Defendant's Second Motion to Vacate Plea Agreement Based on Improper Legal Advice.

SO ORDERED, this 2nd day of December 2021.



---

HONORABLE ALBERTO E. TOLENTINO
Judge, Superior Court of Guam